**Emil YUSUF; et al., Petitioners,**

v.

**Alberto GONZALES,\* Attorney General, Respondent.**

No. 03–72991.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 2004.

Decided April 8, 2005.

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

\* Alberto Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(c)(2).

934

Eugene C. Wong, Esq., Robert G. Ryan, Esq., Law Offices of Eugene C. Wong, PC, San Francisco, CA, for Petitioners.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel Department of Homeland Security, San Francisco, CA, M. Jocelyn Wright, Esq., Daniel E. Goldman, Esq., Dimple Gupta, Esq., DOJ–U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER, NOONAN, and THOMAS, Circuit Judges.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

## MEMORANDUM **

Emil Yusuf, his wife Lily, and three of their children, Nadya, Aldy and Cynthia, petition for review of the denial of their applications for withholding of removal and relief under the Convention Against Torture ("CAT").

The Yusufs entered the United States in October and December 1997. Dahlia Yusuf later married and returned to Indonesia, but the rest of the family remained in the United States and overstayed their visas. Yusuf applied for asylum in September 2000, beyond the one-year filing deadline. The Immigration Judge ("IJ") ruled that Emil Yusuf had not satisfied any exception to the asylum application deadline.[1] As a result, each family member filed an individual application for withholding of removal and CAT relief. The IJ denied all of the Yusufs' applications, and the Board of Immigration Appeals ("BIA") summarily affirmed. The Yusufs filed a timely petition for review.

We have jurisdiction pursuant to 8 U.S.C. § 1252. Since the BIA affirmed the decision of the IJ without opinion, we review the IJ's decision as the final agency determination. *See Garcia–Martinez v. Ashcroft*, 371 F.3d 1066, 1074 (9th Cir. 2004). We review for substantial evidence. *Alvarez–Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir.2003). Because the IJ did not make an adverse credibility finding, we accept the petitioners' factual contentions as true. *Kalubi v. Ashcroft*, 364 F.3d 1134, 1137 (9th Cir.2004).

Emil Yusuf is an ethnic Chinese and Catholic Indonesian. He was in the construction business in Djarkata. In 1997, his store was stoned by a mob of Moslem Indonesians. His trucks, parked in a yard next to his home, were burned. His busi-

1. The Yusufs do not challenge the IJ's determination that they are barred from applying for asylum.

ness was destroyed. The mob yelled, "Kill Chinese." He and his family fled and took refuge elsewhere. The police did nothing when he reported the attack to them.

The IJ gave this report of Emil Yusuf's testimony and said: "What has been described, as far as the past 'persecution,' is significant from the standpoint that the respondents have been involved in a very bad situation in Indonesia, which resulted in their being frightened for their lives and also a destruction of their personal property." Unaccountably, however, the IJ continued: "I cannot find that this is a case where past persecution has been established on account of any one of the five protected grounds." On this point, the IJ was demonstrably in error. Emil Yusuf saw his business destroyed and felt his life endangered by a mob crying out for the death of Chinese. The attack on him was not random. It was an attack on him as a Chinese businessman. It constituted ethnic persecution. Because the Yusufs have established that they suffered past persecution, a presumption arises that they are entitled to withholding of removal. *See, e.g., Baballah v. Ashcroft,* 367 F.3d 1067, 1079 (9th Cir.2004). If the INS failed to rebut this presumption, it must be concluded that it is more likely than not that the Yusufs would be subject to persecution upon returning to Indonesia. *Id.*

The IJ continued: "The issue then is whether the circumstances which exist currently in Indonesia would reach the level that would make it a clear probability or real likelihood that they [the Yusufs] would be persecuted in the future." The IJ went on to observe: "The country consists of many ethnic Chinese, as well as mixed Chinese and Indonesians." For the IJ this observation was decisive. Yusuf had not been persecuted on the grounds of ethnicity in the past; if he returned now, he would be just like the "many Chinese" living in Indonesia. In reaching this conclusion, the IJ made a second serious error: an incorrect assessment of the risk of being a Chinese Christian in Indonesia. We have had occasion to examine that risk and concluded on the record in that case "that the Indonesian government is either unwilling or unable to control the forces behind ethnic and religious persecution in Indonesia." *Lolong v. Gonzales,* No. 03–72384, 2005 WL 627779 (9th Cir. Mar.18, 2005). We remand so that the present case may be reexamined in the light of *Lolong.*

The claims of all family members should be treated identically.

Petition GRANTED; case REMANDED.